**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HUGO RENDON** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-242** |
| **GLOBAL TECHNICAL SOLUTIONS, LLC, et al.** | **SECTION: "G"(4)** |

## ORDER

Before the Court is Plaintiff's "Motion for Conditional Class Certification and Judicial Notice."[1] Having considered the motion, the opposition, the reply, the record, and the applicable law, the Court will conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b) and notice shall be sent to: "All persons employed by Global Technical Solutions LLC to work on cell phone towers and not paid overtime for hours they worked in excess of 40 hours, during any work week, during the period of May 2013 to June 2014."

## I.  Background

Plaintiff Hugo Rendon ("Rendon") filed this putative class action on January 27, 2015 alleging violations of the Fair Labor Standards Act ("FLSA").[2] Rendon alleges that he worked for Defendants Global Technical Solutions LLC ("GTS"), Randy Farrell, and Matthew Reck (collectively, "Defendants") as a cell phone tower service provider.[3] Rendon claims that, during that time, he was paid $120 per day and was never paid overtime despite often working thirteen hours

---

[1]  Rec. Doc. 13.

[2]  Rec. Doc. 1.

[3]  *Id.* at p. 2.

1

a day and often more than five days a week.[4]

On July 1, 2015, Plaintiff filed a "Motion for Conditional Class Certification and Judicial Notice."[5] Defendants filed an opposition to Rendon's motion on July 28, 2015.[6] On August 4, 2015, with leave of the Court, Rendon filed a reply brief.[7]

On October 28, 2015, in light of certain arguments made in the parties' pleadings, the Court ordered Plaintiff to submit, if ascertainable, the full identities of certain employees named in Plaintiff's pleadings, and to articulate whether they or any other parties had expressed interest in joining the instant case as putative class members.[8] The Court noted that if Plaintiff could not meet those requirements, he may articulate a reason that such information was not ascertainable for the Court's consideration.[9] On November 27, 2015, Plaintiff submitted the requested memorandum.[10]

## II. Parties' Arguments

### A. Plaintiff's Arguments in Support of Conditional Certification

Plaintiff seeks conditional class certification on the basis that this action arises from a "generally applicable rule, policy, or practice."[11] Specifically, Rendon claims, Defendants did not

---

[4] Id. at p. 4.

[5] Rec. Doc. 13.

[6] Rec. Doc. 18.

[7] Rec. Doc. 22.

[8] Rec. Doc. 35.

[9] Id.

[10] Rec. Doc. 36.

[11] Rec. Doc. 13-1 at p. 4 (quoting Donohue v. Francis Servs., Inc., No. 04-170, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004) (Barbier, J.)).

pay employees overtime for hours worked in excess of forty hours per week.[12] Plaintiff claims that the Court may not bar him from proceeding collectively unless the action arises from circumstances that are purely personal to him.[13] Furthermore, Rendon claims, the decision to allow notice to a FLSA class is "made applying a fairly lenient standard, and usually results in conditional certification of a representative class."[14] As such, Rendon seeks conditional class certification and judicial notice pursuant to 29 U.S.C. § 216(b) on behalf of Defendants' employees who (1) were employed by GTS to work on cell phone towers within the past three years, and (2) were not paid overtime for the hours that they worked in excess of 40 hours, during any work week.

Rendon cites *Donohue v. Francis Services, Inc.* for the applicable standard for FLSA class certification, which he claims has two requirements: (1) the named representatives and the putative members of the prospective FLSA class must be similarly situated; and (2) the action at issue must have a general effect.[15] Plaintiff alleges that Defendants employed at least 12 other workers with duties essentially the same as Rendon's, and that it is "abundantly clear" that the putative class action's members were similarly situated and that the policy of not paying overtime to laborers was generally applicable.[16]

Rendon claims that § 216(b) of the FLSA provides for "similarly situated" employees to proceed collectively in pursuit of overtime wages unlawfully withheld.[17] According to Plaintiff,

---

[12] *Id.*

[13] *Id.* at p. 5 (citing *Donohue*, 2004 WL 1161366, at *1).

[14] *Id.* (quoting *Donohue*, 2004 WL 1161366, at *1).

[15] *Id.* at p. 7 (citing *Donohue*, 2004 WL 1161366, at *1).

[16] *Id.* at pp. 7–8.

[17] *Id.* at p. 8.

district courts have the discretionary power in such cases to authorize judicial notice to potential class members to inform them of the action and give them an opportunity to participate by opting in.[18] Plaintiff argues that the ultimate purpose of judicial notice is to give employees accurate and timely notice concerning the pending collective action so they can make informed decisions about whether to participate.[19]

Plaintiff urges the Court to conditionally certify the class using the two-step approach from *Mooney v. Aramco Services Co.* and *Lusardi v. Xerox Corp.*, whereby the district court first decides whether notice of the action should be given to potential class members, after which putative class members are given notice and the opportunity to opt in to the collective action and the case proceeds through discovery.[20] The second step, according to Plaintiff, takes place later if and when the defendant files a motion for decertification, at which point the court makes a factual determination on the similarly situated question.[21] Rendon asserts that the named representative and members of the prospective FLSA class are "similarly situated" if there is "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice."[22] Plaintiff claims that he has presented evidence that he is similarly situated to other putative plaintiffs for purposes of collective discovery and judicial notice because members of the class had the same job duties, were paid by the same methods, were paid roughly the same amounts,

---

[18] *Id.* (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)).

[19] *Id.*

[20] *Id.* at p. 9 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)).

[21] *Id.* (citing *Donohue*, 2004 WL 1161366, at *1–2).

[22] *Id.* at p. 10 (quoting *Whitworth v. Chiles Offshore Corp.*, No. 92-1504, 1992 WL 235907, at *1 (E.D. La. Sept. 2, 1992)).

4

often worked more than 40 hours a week, and did not receive overtime for those hours.[23]

Finally, Plaintiff argues that the case is appropriate for judicial notice, and that the Court should approve sending a notice to potential class members.[24] Rendon argues that, in a case brought under § 216(b) of the FLSA, a district court has both the duty and the broad authority to enter appropriate orders governing the conduct of counsel and parties because of the potential for abuse of the class action mechanism.[25] Plaintiff argues that a court-approved notice to potential plaintiffs in FLSA collective actions is proper in "appropriate cases," and that it is for the district court to determine which cases are appropriate.[26]

Rendon claims that the instant case is appropriate for the sending of a notice because: (1) the statute of limitations is running on members' claims; (2) judicial economy would be served if employees could pursue their claims in one forum; and (3) notice will ensure that only those similarly situated join the suit.[27] First, Rendon notes that unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the filing of this action.[28] Next, Plaintiff argues that including all the individuals who wish to pursue their claims in one action will benefit the resolution of this case at least through the discovery phase, since identical issues of law and fact exist among all employees who were not properly compensated by Defendants.[29]

---

[23] *Id.* at p. 11.

[24] *Id.*

[25] *Id.* at p. 12 (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989)).

[26] *Id.* (quoting *Hoffman-La Roche*, 493 U.S. at 169–70).

[27] *Id.* at pp. 11–14.

[28] *Id.* at p. 13 (citing *Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998)).

[29] *Id.*

Rendon also alleges that a carefully drafted notice will ensure that only employees who were employed by GTS to work on cell phone towers within the past three years, and who were not paid overtime for the hours they worked in excess of 40 per week, will join the action.[30] Finally, Rendon argues that his proposed notice is "timely, accurate, and informative" as required and should be approved by the Court.[31]

## B.   *Defendants' Arguments in Opposition to Conditional Certification*

Defendants argue in opposition that Rendon was a day rate laborer, and therefore it would not be appropriate to conditionally certify a class of all GTS employees who worked on cell towers, because some employees were full-time salaried employees.[32] Furthermore, Defendants contend that Rendon only worked for GTS for approximately one year, between May 2013 and June 2014, but that he is seeking certification of claims reaching back three years.[33] In addition, Defendants argue that Rendon did not work every day but only when jobs were available, and thus there were "gaps" in Rendon's employment with GTS even during the year that he worked with the company.[34]

Defendants argue that under the two-step approach for certifying a collective action under 29 U.S.C. § 216(b), the plaintiff has the burden at the first stage of demonstrating that notice of the action should be given to other employees, a burden often met by presenting "detailed allegations

---

[30]  *Id.* at pp. 13–14.

[31]   *Id.* at p. 14.

[32]  Rec. Doc. 18 at p. 2.

[33]  *Id.*

[34]  *Id.*

supported by Affidavits."[35] Defendants claim that the plaintiff's burden, even at the first stage, is not "invisible" and cannot be satisfied by relying on the conclusory allegations of just the named plaintiff or a few employees.[36] Defendants argue that Plaintiff has failed to demonstrate that any other employees desire to opt-in to a putative class, which is required before a certification and prior to notice being authorized by the Court.[37] According to Defendants, Plaintiff's unsupported expectation that other employees would come forward and join the suit is insufficient to justify certification of a collective action and notice to a potential class.[38]

Defendants claim that Rendon has not proven enough even to overcome the lenient standard for conditional certification, and has not included even a single supporting affidavit or declaration from any other potential class member, even though his own brother and presumably a member of the class also worked for GTS.[39] They also note that Rendon was an employee of GTS only, and not of Defendants Farrell or Reck, the listed officers and members of GTS.[40]

Moreover, Defendants argue that Rendon does not provide any details of a pattern, practice or policy other than mere allegations that other crew members were paid in the same manner, and does not specify at which job site or location alleged FLSA violations occurred.[41] Without knowing when or where the alleged violations occurred, Defendants aver, the Court cannot determine the

---

[35] *Id.* at p. 3 (quoting *Parilla v. Allcom Constr. & Installation Servs. Inc.*, 2009 WL 1456442, at *1 (M.D. Fla. May 2, 2009)).

[36] *Id.*

[37] *Id.* at pp. 3–4.

[38] *Id.* at p. 4 (citing *Sandate v. Makotek, LLC*, No. 06-601 2006 WL 4792782 (M.D. Fla. Sept. 28, 2006)).

[39] *Id.* at pp. 4–5.

[40] *Id.* at p. 6.

[41] *Id.*

appropriate scope of the proposed class and of the notice process.[42] Defendants accuse Rendon of merely naming, by first name only, two other alleged employees who "may" be willing to join the lawsuit, and failing to indicate whether he has spoken to the workers to determine if they would in fact join the putative class.[43] Defendants cite *Cohen v. Allied Steel Buildings, Inc.* for the proposition that § 216(b) requires the plaintiff to prove that there is a reasonable basis for his claim that there are other similarly situated employees, or else the interests of judicial economy would not be met.[44]

According to Defendants, in *Cohen*, the plaintiff submitted two declarations asserting that time records were not properly kept that employees were not paid overtime wages.[45] Defendants aver that in *Cohen*, however, the court held that the plaintiff's conclusory statements did not rise to the level required and noted that the "allegations were spare and limited to their knowledge of Defendant's operations and did not even provide a job description."[46] Thus, Defendants argue, Plaintiff has failed to meet the law's very minimal standard, and is instead trying to use the FLSA notice and opt-in process as a discovery device to determine whether certification is appropriate.[47]

Furthermore, Defendants aver that even if Rendon's declaration is accurate as to total wages paid and hours worked, it is clear that at his stated "day rate" of $120, Plaintiff could work 13 hours a day with no pay or over-time deficiency under FLSA, given that the minimum wage is $7.25 per

---

[42] *Id.*

[43] *Id.*

[44] *Id.* at p. 7 (citing *Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d. 1331 (S.D. Fla. 2008)).

[45] *Id.* (citing *Cohen*, 554 F. Supp. 2d at 1334).

[46] *Id.* (quoting *Cohen*, 554 F. Supp. 2d at 1134).

[47] *Id.* at pp. 7–8.

hour.[48] Even if Plaintiff worked an average of 12 hours or less per day for seven days, amounting to 84 hours, there would be no "wage loss" under the FLSA, according to Defendants, because Plaintiff has indicated that he was paid at least $840 for a straight work week.[49] Thus, Defendants claim, Plaintiff is asking the Court to conditionally certify a class where there would appear to be no wage or pay loss.[50]

Finally, Defendants contend that the requested class outlined by Rendon is overly broad and inappropriate and, in the event that conditional certification is granted, the notice should be narrowly tailored to include only those similarly situated to Plaintiff.[51] This should include a potential class of between 9 and 16 workers, according to Defendants, who argue that the limited class should itself raise questions as to whether conditional certification is warranted.[52] Moreover, Defendants aver, any notice issued should be limited to GTS only, as it alone was Rendon's alleged employer.[53]

## C.     *Plaintiff's Arguments in Further Support of Conditional Certification*

In response, Rendon argues that Defendants' arguments are unsupported by cases from the Eastern District of Louisiana or the Fifth Circuit.[54] Plaintiff argues that the Fifth Circuit does not require him to demonstrate the intentions of putative class members at the conditional certification stage, and that courts within this District have almost exclusively ruled that the intentions of putative

---

[48] *Id.* at pp. 6–7.

[49] *Id.* at p. 7.

[50] *Id.*

[51] *Id.* at p. 8.

[52] *Id.* at p. 9.

[53] *Id.* at p. 10.

[54] Rec. Doc. 22 at p. 1.

class members need not be demonstrated at this stage.[55] Instead, Rendon avers, courts in this District follow the seminal case of *Mooney v. Aramco Services*, which states that district courts make a decision usually based only on pleadings and any affidavits submitted, and that the determination is made using a lenient standard that typically results in conditional certification.[56]

Plaintiff points to two decisions by this Court finding affidavits germane to the "similarly situated" analysis, but distinguishes them as involving extensive manageability concerns.[57] In *Crowley v. Paint & Body Experts of Slidell, Inc.*, Rendon claims, the Court was faced with the prospect of certifying a class of plaintiffs whose counsel had withdrawn after filing the class certification motion, and in *Lang v. DirecTV, Inc.*, the plaintiffs sought to certify a nationwide class of thousands of satellite television technicians.[58] In less difficult cases, however, Plaintiff contends that this Court has found that affidavits from putative opt-ins are not required.[59] Rendon claims that most courts do not require evidence of the intentions of potential opt-in plaintiffs, and that there is no requirement under the FLSA or within the Fifth Circuit that a desire to opt in be manifested when no discovery has taken place.[60] Plaintiff also cites two cases argued by Plaintiff's counsel in which conditional certification was granted without affidavits from potential opt-ins.[61]

---

[55] *Id.*

[56] *Id.* at p. 2 (citing *Mooney v. Aramco Servs.*, 54 F.3d 1207, 1214–15 (5th Cir. 1995)).

[57] *Id.* at pp. 2–3 (citing *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607 (E.D. La. Dec. 30, 2011); *Crowley v. Paint & Body Experts of Slidell, Inc.*, No. 14-172, 2014 WL 2506519 (E.D. La. June 3, 2014)).

[58] *Id.* at p. 3.

[59] *Id.* (citing *Chapman v. LHC Grp., Inc.*, No. 13-6384, 2014 WL 6318785, at *8 (E.D. La. Nov. 13, 2014) (Brown, J.)).

[60] *Id.*

[61] *Id.*

Rendon quotes at length a decision by another section of this District stating that there is no categorical rule in the Fifth Circuit that plaintiffs must submit evidence at the time of conditional certification that other potential plaintiffs might opt in to the case.[62] According to Plaintiff, in *White v. Integrated Electronic Technologies, Inc.*, Judge Morgan found that such a rule need not be applied because: (1) the FLSA includes no such statutory requirement; (2) the Fifth Circuit and Supreme Court have imposed no such requirement; (3) the FLSA, unlike a Rule 23 class action, includes no numerosity requirement; and (4) requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined would be dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes.[63] Rendon argues that it would run counter to the purposes of the FLSA if putative plaintiffs were required to come forward before the class plaintiff could be permitted to notify them of the case.[64] Plaintiff contends that it is clearly not a requirement in this Circuit that he must provide evidence of putative class members' intention to opt-in to the class, and furthermore argues that it is also not a requirement that siblings provide supporting affidavits.[65]

Plaintiff also counters Defendants' allegations that his declaration is too "conclusory," arguing that his allegations are more than sufficient for conditional certification.[66] Rendon argues that he has given a detailed factual account of Defendants' pay practices and accuses Defendants

---

[62] *Id.* at p. 4 (citing *White v. Integrated Elec. Techs., Inc.*, 2003 WL 2903070 (E.D. La. July 2, 2004) (Morgan, J.)).

[63] *Id.*

[64]  *Id.* at p. 5.

[65] *Id.* at n.8.

[66] *Id.* at p. 6.

of citing no law to support their various allegations that Plaintiff has failed to allege enough specific facts for conditional certification.[67] Plaintiff argues that none of Defendants' requested facts, such as the "crew composition" or "crew identity," are requirements under the law.[68]

Rendon also challenges Defendants' allegedly improper arguments about the merits of the case.[69] Rendon argues further that Defendants attempt to import a "numerosity" factor into FLSA collective actions by implying that a class of "only" nine to sixteen workers "raises questions" about whether class certification is warranted in this case, without pointing to any cases in support of these arguments.[70] Plaintiff accuses Defendants of failing to properly calculate overtime pursuant to the FLSA, but argues that nonetheless Defendants' "improper arguments" about what "may" be proved in a trial should be disregarded for purposes of the present motion.[71] Finally, Plaintiff reiterates that his proposed notice is proper and argues that Defendants' concerns about potential differences within the class would be better addressed after the record is more developed.[72]

### D.   Plaintiff's Supplemental Memorandum

In a declaration filed in support of the motion for conditional certification, Rendon alleged that he knew of two coworkers—men named "Efrain" and "Luis"— who Plaintiff believed would

---

[67]  *Id.*

[68]  *Id.* at pp. 6–7.

[69]  *Id.* at p. 7.

[70]  *Id.*

[71]  *Id.*

[72]  *Id.* at pp. 8–9 (citing *Wellman v. Grand Isle Shipyard, Inc.*, No. 14-381, 2015 WL 5810529, at *7 – 8 (E.D. La. Nov. 7, 2014) (Africk, J.) ("Although these differences may ultimately provide the grounds for a decertification motion, that determination is a fact-intensive inquiry that would be best conducted after discovery.").

be interested in joining this lawsuit.[73] On October 28, 2015, the Court ordered Plaintiff to submit, if ascertainable, the full identities of "Luis" and "Efrain," and to articulate whether they or any other parties had expressed interest in joining the instant case as putative class members.[74] The Court noted that if Plaintiff could not meet those requirements, he may articulate a reason that such information was not ascertainable for the Court's consideration.[75]

On November 27, 2015, in response to the Court's Order, Plaintiff submitted a supplemental memorandum stating that his counsel had made repeated attempts to learn more information about "Luis" and "Efrain" from Defendants, but that they had refused to provide information about either of those individuals, or to make available for deposition someone who knows more about their identities.[76] According to Plaintiff, Defendants did not return repeated phone calls or emails over the course of two weeks.[77] Plaintiff contends that "Defendants' refusal to provide this information suggests that they seek to avoid disclosing that there are more people out there like Mr. Rendon."[78]

Rendon alleges that although he was unable to learn more information about Luis and Efrain, he can vouch for the fact that the two men worked alongside him and also did not receive overtime pay.[79] Rendon also claims that although Defendants "make much ado" about the fact that Rendon's brother, also an employee of Defendants, did not join the lawsuit, Rendon's brother is not a putative

---

[73] Rec. Doc. 13-2 at p. 2.

[74] Rec. Doc. 35.

[75] *Id.*

[76] Rec. Doc. 36 at p. 1.

[77] *Id.* at n.1.

[78] *Id.* at p. 1.

[79] *Id.* at p. 2.

class member because he did receive overtime pay.[80] Plaintiff notes that Defendants employed two classes of workers: (1) people with social security numbers who were paid overtime; and (2) people with no social security numbers who were not paid overtime.[81]

Plaintiff urges the Court to consider two recent rulings in the Eastern District of Louisiana, each holding that a plaintiff need not prove the intent or existence of putative class members at the preliminary class certification stage.[82] Furthermore, Plaintiff contends, Defendants offer no evidence or even argument that the pay scheme applied to Rendon was specific solely to him.[83] Plaintiff re-urges his request to certify the class, and asks, in the alternative, that the Court defer ruling until Plaintiff can properly compel responses to the Court's inquiry.[84]

### III.  Law and Analysis

#### A.      *Legal Standard*

Under § 216(b) of the FLSA, one or more employees can pursue a class action in a representative capacity on behalf of similarly situated employees.[85] Such collective actions allow similarly situated plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefits the judicial system "by efficient resolution in one proceeding of

---

[80] *Id.*

[81] *Id.*

[82] *Id.* (citing *Banegas v. Calmar Corp.*, No. 15-593, 2015 WL 4730734 (E.D. La. Aug. 10, 2015) (Lemelle, J.); *Lopez v. Hal Collums*, No. 15-4113, Rec. Doc. 23 (Barbier, J.)).

[83] *Id.* at p. 3.

[84] *Id.*

[85] 29 U.S.C. § 216(b) ("An action to recover the liability . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").

common issues of law and fact."[86] A plaintiff may proceed collectively under the FLSA unless "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice."[87] There are two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated" and (2) a plaintiff must consent in writing to take part in the suit.[88] This latter requirement means that a representative action follows an "opt-in" rather than an "opt-out" procedure.[89]

The FLSA does not define the requirements for employees to be deemed "similarly situated." Instead, a two-step method is routinely utilized, which was originally articulated in *Lusardi v. Xerox Corporation*[90] and described in detail by the Fifth Circuit in *Mooney v. Aramco Services, Co.*[91] Under this approach, a court first determines at the "notice stage" whether notice should be given to potential members of the collective action, and this determination is usually made on the basis of "only . . . the pleadings and any affidavits."[92] Because the court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[93] Generally, courts do not

---

[86] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[87] *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) (Zainey, J.) (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).

[88] 29 U.S.C. § 216(b).

[89] *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[90] 118 F.R.D. 351 (D.N.J. 1987).

[91] 54 F.3d at 1213–14.

[92] *See id.*

[93] *Id.* at 1214.

require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[94]

At the notice stage, the burden is on the plaintiff to demonstrate that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[95] The burden to show that plaintiffs are similarly situated rests on the plaintiff,[96] but that burden may be satisfied by demonstrating only a reasonable basis for the allegation that a class of similarly situated persons may exist.[97] In determining whether plaintiffs have made substantial allegations of a single plan, courts often look to "whether potential plaintiffs were identified . . . whether affidavits of potential plaintiffs were submitted . . . and whether evidence of a widespread discriminatory plan was submitted."[98]

Only those employees who affirmatively "opt-in" to the suit are bound by a collective action under the FLSA.[99] Affidavits from potential opt-in plaintiffs may be probative, but "in the Fifth Circuit, there is no categorical rule that Plaintiffs must submit evidence at this time that other

---

[94] *Id*. at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[95] *Lang v. DirecTV, Inc*., No. 10-1085, 2011 WL 6934607, at *4 (E.D. La. Dec. 30, 2011) (Brown, J.) (quoting *Morales v. Thang Hung Corp*., 4:08–2795, 2009 WL 2524601, at *2 (S.D. Tex., Aug.14, 2009)).

[96] *See England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *Kenyatta-Bean v. Hous. Auth. of New Orlean*, No. 04-2592, 2005 WL 3543793, at *6 (E.D. La. Nov. 18, 2005) (Lemmon, J.).

[97] *See Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (Fallon, J.) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996)).

[98] *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *5 (E.D. La. Dec. 30, 2011) (quoting *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)).

[99] 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[individuals] seek to opt-in to this case."[100]

"At the notice stage, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[101] If it is later determined, after a more extensive discovery process, that a plaintiff failed to carry his burden of establishing that he and members of the proposed class are similarly situated, an employer may file a motion to decertify the class.[102]

The more lenient *Lusardi* approach is not the only recognized method for conditional collective action certification,[103] although it is the more common approach and routinely used by courts in this District.[104] Moreover, this approach "is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23,

---

[100] *Perkins v. Manson Gulf, L.L.C.*, No. 14-2199, 2015 WL 771531, at *4 (E.D. La. Feb. 23, 2015) (Africk, J.) (quoting *White v. Integrated Elec. Techs., Inc.*, No. 12-359, 2013 WL 2903070, at *7 (E.D. La. June 13, 2013) (Morgan, J.)).

[101] *Banegas v. Calmar Corp.*, No. 15-593, 2015 WL 4730734, at *4 (E.D. La. Aug. 10, 2015) (Lemelle, J.).

[102] *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

[103] In *Mooney*, the Fifth Circuit also discussed a second methodology referred to at the "*Shushan*" or "spurious class action" approach, in which the court conducts an inquiry similar to that outlined in Federal Rule of Civil Procedure 23. *See Mooney,* 54 F.3d at 1214 (citing *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990)). *Mooney* did not state which of the two procedures is the proper approach, although the "two stage" *Lusardi* approach is more commonly used by district courts. The *Shushan* approach has been described as "more stringent" than the "two stage" approach. *See, e.g.*, *Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663, 670 (N.D. Tex. 2007). Under the *Shushan* analysis, plaintiffs must prove the existence of a definable, manageable class, and that plaintiffs are proper representatives of the class. This requires plaintiffs to provide individualized proof that the claims of every single opt-in plaintiff can be presented to a jury with some measure of efficiency. *Shushan*, 132 F.R.D. at 268.

[104] *See, e.g., Johnson v. Big Lots Stores, In.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008) (Vance, J.) (describing the *Lusardi* approach as the "prevailing method"); *Basco v. Wal-Mart Stores*, No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (Duval, J.) ("Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reach on how section 216(b) cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis . . . ."); *see also* 7B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1807 (3d ed. 2002) (stating that "most courts in collective actions follow a two-stage certification process").

Fed. R. Civ. P., and the collective action provided by FLSA."[105] In his motion, Plaintiff looks to the *Lusardi* standard.[106] Defendants do not explicitly cite either *Lusardi* or the alternative approach described in *Shushan v. University of Colorado*,[107] but Defendants do not appear to challenge Plaintiff's reliance on *Lusardi*, and in fact claim that the "case law suggests that the district courts apply a two-tiered approach to certify a class in FLSA cases."[108] Accordingly, this Court will apply the *Lusardi* approach in determining whether this case is appropriate for collective action treatment.

**B.    Analysis**

At the notice stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[109] Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[110] Here, Plaintiff alleges that his crew consisted of three or four other service providers who all worked the same jobs and shifts and had the same basic responsibilities, including running cabling and connecting cabling to cell phone towers.[111] He claims that there were other GTS crews providing the same services, and that there was no difference in the work hours, shifts or

---

[105]   *Smith v. Servicemaster Holding Corp.*, No. 10-444, 2011 WL 4591088 (M.D. La. Sept. 30, 2011) (noting the important difference between opt-in and opt-out class actions) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).

[106]   *See* Rec. Doc. 13-1 at p. 9.

[107]   132 F.R.D. 263 (D. Colo. 1990).

[108]   Rec. Doc. 18 at p. 3 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); *Donohue v. Francis Servs. Inc.*, No. 04-170, 2004 WL 1161366, at *1 (E.D. La. 2004)).

[109]   *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995).

[110]   *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[111]   Rec. Doc. 13-2 at p. 1.

responsibilities of the various GTS crews that Rendon personally worked in.[112] Rendon further claims that he was paid $120 in cash for each day that he worked, and that his co-workers, other than his supervisor, "earned substantially similar wages."[113] Plaintiff claims that he often worked seven days a week, for thirteen hours per day on average, and that it was "not uncommon" for him to have a seventeen-hour workday.[114] Rendon states that he never received any "extra" or "overtime" compensation for the hours he worked in excess of forty per week, and that he knows "some" of his coworkers did not either because he was present when coworkers were paid and saw how much they received.[115] Finally, Plaintiff names two other employees, "Efrain" and "Luis," who "earned the same wages" as Rendon, "performed the same job duties," and who Rendon believes "would be interested in joining this lawsuit."[116]

The parties spend a significant portion of their briefing discussing whether Plaintiff was required to submit affidavits from other potential plaintiffs as evidence that other plaintiffs may desire to opt-in to the putative class.[117] As Plaintiff correctly notes, courts in the Fifth Circuit do not typically require plaintiffs to prove that other potential plaintiffs desire to opt-in to the case, via affidavit or otherwise.[118] However, Defendants argue that the lack of supporting affidavits also

---

[112] *Id.*

[113] *Id.*

[114] *Id.* at p. 2.

[115] *Id.*

[116] *Id.*

[117] *See* Rec. Doc. 18 at pp. 5–8; Rec. Doc. 22 at pp. 1–6.

[118] *See, e.g.*, *Jones v. Yale Enforcement Servs., Inc.*, No. 14-2831, 2015 WL 3936135, at *2 n.3 (E.D. La. June 26, 2015) (Zainey, J.); *Perkins v. Manson Gulf, L.L.C.*, No. 14-2199, 2015 WL 771531, at *4 (E.D. La. Feb. 23, 2015) (Africk, J.); *White v. Integrated Elec. Techs., Inc.*, No. 12-359, 2013 WL 2903070, at *7 (E.D. La. June 13, 2013) (Morgan, J.).

speaks to Plaintiff's failure to show that a "common policy or plan that violated the law existed" with respect to other potential opt-in plaintiffs.[119] According to Defendants, Rendon's personal experiences can only speak to the one year (out of the three-year period he wishes to certify as a class) that he actually worked at GTS.[120] Defendants argue that Rendon's allegedly sparse declaration, unsupported by affidavits from other employees, fails to inform the court of where or when alleged FLSA violations occurred.[121]

Plaintiff cites two cases argued by Plaintiff's counsel in which conditional certification was granted without affidavits from potential opt-ins.[122] In the first, *Martinez v. Southern Solutions Land Management*, another section of this District conditionally certified a class at a status conference and did not publish the reasons for the order.[123] In reviewing the docket in that case, this Court observes that, after the motion was filed but before the court ruled, the plaintiff submitted an opt-in consent form from another employee,[124] as well as a revised declaration describing a conversation in which another employee attested that he and others would be interested in joining the lawsuit.[125] In the second case cited by Plaintiff, *Calix v. Ashton Marine*, another section of this District did not publish

---

[119] Rec. Doc. 18 at p. 5.

[120] *Id.*

[121] *Id.* at p. 6.

[122] Rec. Doc. 22 at p. 3.

[123] *Martinez v. S. Sols. Land Mgmt. LLC*, No. 14-2366 (E.D. La. 2015) (Milazzo, J.).

[124] Notice of Filing Consent to Join Collective Action, *Martinez v. S. Sols. Land Mgmt. LLC*, No. 14-2366 (E.D. La. March 12, 2015).

[125] Declaration of Carlos Martinez, *Martinez v. S. Sols. Land Mgmt. LLC*, No. 14-2366 (E.D. La. March 12, 2015).

a written opinion when it granted conditional certification of the class.[126] This Court observes, however, that in *Calix*, the plaintiff submitted a declaration stating that he spoke with at least five other coworkers, identified by name, who told him that they were working in excess of 40 hours per week and not receiving overtime pay.[127]

Both *Martinez* and *Calix* included evidence that more than a single person had alleged, or would opt-in to allege, a violation of the FLSA. *Martinez* involved at least one additional opt-in plaintiff as well as evidence of conversations suggesting others who might join the suit,[128] and *Calix* included a declaration that at least five other individuals had been subjected to similar employment practices and had discussed their lack of overtime compensation.[129] Here, Rendon states that he worked with two men named Efrain and Luis who "earned the same wages" as Rendon, "performed the same job duties," and who Rendon "think[s]" would be interested in joining the lawsuit.[130]

The Court notes that Rendon's evidence is more sparse than that provided in the cases on which he relied for the proposition that affidavits are not necessary in the Fifth Circuit to prove that additional plaintiffs are interested in opting into the suit. Indeed, although such affidavits are not necessary,[131] they do help to buttress a plaintiff's argument that other employees are "similarly

---

[126] *Calix v. Ashton Marine LLC*, No. 14-2430 (E.D. La. March 25, 2015) (Duval, J.).

[127] Declaration of Carlos Calix, *Calix v. Ashton Marine LLC*, No. 14-2430 (E.D. La. March 9, 2015).

[128] Declaration of Carlos Martinez, *Martinez v. S. Sols. Land Mgmt. LLC*, No. 14-2366 (E.D. La. March 12, 2015).

[129] Declaration of Carlos Calix, *Calix v. Ashton Marine LLC*, No. 14-2430 (E.D. La. March 9, 2015).

[130] Rec. Doc. 13-2 at p. 2.

[131] *See Dreyer v. Baker Hughes Oilfield Operations, Inc*., 2008 WL 5204149, at * 3 (S.D. Tex. Dec.11, 2008); *Neagley v. Atascosa Cty.*, 2005 WL 354085, *3 (W.D. Tex. 2005) (stating that although affidavits of other similarly situated employees "would help make the initial determination of a collective action easier, the Court does not believe that it is required"); *Taillon v. Kohler Rental Power, Inc.*, 2003 WL 2006593, *3 (N.D. Ill. 2003) (holding that there is no "independent requirement of proof of desire to join in the action for authorization of notice under § 216(b)").

situated."[132] The Court therefore ordered Rendon to submit supplemental briefing providing additional identifying information about the individuals Plaintiff suspects would be interested in joining this lawsuit, or to provide an explanation of why such information was not ascertainable.[133] In response, Plaintiff alleged that despite numerous requests, Defendants did not disclose any of the information sought by Plaintiff, and that he was unable to uncover additional identifying information on his own.[134]

In deciding whether Plaintiff has met the requirements of the two-step *Lusardi* approach, the Court notes that employers should not be unduly burdened by frivolous fishing expeditions.[135] Nor, however, should employers be able to escape liability by taking advantage of their monopoly on the information plaintiffs may need to prove their cases. Here, the necessary information required to bolster Plaintiff's case is solely in the hands of Defendants, who Plaintiff alleges do not appear willing to share such information. As the Fifth Circuit has noted, "[a]t the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."[136] Given the lenient standard at this stage, and Plaintiff's specific allegations concerning his own rate of pay and his knowledge, albeit limited, of the rate of pay of similarly situated workers, the Court finds that

---

[132] *See Chapman v. LHC Grp., Inc.*, No. 13-6384, 2014 WL 6318785, at *8 (E.D. La. Nov. 13, 2014) (Brown, J.) (finding that affidavits and consent notices were "pertinent" to the Court's inquiry as to whether plaintiffs had met the "similarly situated" standard).

[133] Rec. Doc. 35.

[134] Rec. Doc. 36.

[135] *See Lima v. Int'l Catastrophe Sols., Inc.,* 493 F. Supp. 2d 793, 799 (E.D. La. 2007) (Fallon, J.); *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007); *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 401 (E.D. Tex. 1999).

[136] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995).

conditional certification and notice to potential class members is warranted at this time.

The Court is aware that Defendants have expressed concerns regarding the temporal scope of the proposed class, noting that Rendon alleges that he was employed by GTS between May of 2013 and June of 2014, but that he seeks to certify a class of employees who worked for Defendants during the past three years.[137] Plaintiff does not provide any rationale for the three-year time span at this time. Therefore, the time span appears arbitrary. Accordingly, the Court shall limit the class period to the dates worked by Rendon. Therefore, for the above stated reasons, notice shall be sent to: "All persons employed by Global Technical Solutions LLC to work on cell phone towers and not paid overtime for hours they worked in excess of 40 hours, during any work week, during the period of May 2013 to June 2014."

Finally, Defendants have also objected to Rendon's proposed notice.[138] The Court orders that the Notice be revised consistent with this Order. If the parties cannot agree to a joint notice, they should request an expedited status conference.

### III.  Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Conditional Class Certification pursuant to Section 216(b) of the Fair Labor Standards Act is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Notice shall be sent to: "All persons employed by Global Technical Solutions LLC to work on cell phone towers and not paid overtime for hours they worked

---

[137]  Rec. Doc. 18 at p. 2.

[138]  *Id.* at p. 9.

in excess of 40 hours, during any work week, during the period of May 2013 to June 2014."

**IT IS FURTHER ORDERED** that the parties meet and confer regarding the form and content of the Proposed Notice, in keeping with the Court's ruling herein. The parties are ordered to submit a joint Proposed Notice within 10 days of the date of this Order. If the parties are unable to agree on a Proposed Notice, the parties shall submit (1) their proposed notice and (2) their objections, with supporting authority, to the opposing party's notice and/or consent form, within 10 days of this Order, and request an expedited status conference on the matter.

**NEW ORLEANS, LOUISIANA** this __4th__ day of December, 2015.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**